## SYMONDS *v.* CARLETON.

When a debtor, arrested in one county, gives bond to take the poor debtor's oath in one year or surrender himself to the creditor, the taking of the oath in another county is not a performance of the condition.

The performance of the condition is not excused by the sickness and confinement of the debtor.

DEBT upon a jail bond dated February 3d, 1860. It was agreed that the principal, John Carleton, at the time of his arrest, resided and ever since then has resided at Manchester, in the county of Hillsborough, but was arrested at Concord, in the county of Merrimack, upon an execution issued upon a judgment rendered in said county of Merrimack, and gave bond in the usual form ; that within one year from the date of said bond, on the 12th day of January, 1861, the principal made an application to two justices of the peace and of the quorum for said county of Hillsborough to be allowed to take the poor debtor's oath ; that an order of notice was issued by said justices, returnable before them at Manchester, and the same was properly served on the plaintiff ; that at the time and place mentioned in the notice, the defendant was admitted to take and did take the oath prescribed for the relief of poor debtors, on the first day of February, 1861, and within a year from the date of said bond.. This plaintiff did not appear at these proceedings, or give any notice to said justices or defendants in reference thereto.

It was further agreed, that at the time of making said application, and thence up to the expiration of the year, the debtor was confined to his house in Manchester by sickness. To this fact the plaintiff objected, and alleged that the same was incompetent and immaterial to be considered.

It was agreed by the parties, that if the taking of said oath in the manner above stated was a legal compliance with the condition of the bond—then judgment should be rendered for the defendants for their costs; otherwise for the plaintiff for the amount of said execution and costs. The oath was taken February 1st, 1861, and the year expired February 3d, 1861.

*Minot & Mugridge*, for the plaintiff, to the point that the oath in another county would avail nothing, cited *Hawley* v. *White*, Sullivan county, July term, 1846.

*Flint*, for the defendant, cited Rev. Stat., ch. 180, and 200 ; and to the point that the debtor was excused by sickness, he cited *Blake* v. *Niles*, 13 N. H. 459 ; *Kimball* v. *Cochecho Railroad*, 23 N. H. 582 ; Shep. Touch. 382 ; *Hamilton* v. *Dunklee*, 1 N. H. 174 ; Laughlin's Case, 5 Co. 21 ; Co. Litt. 206, a.

BELLOWS, J. The first question in this case is, whether the taking of the poor debtor's oath in the county of Hillsborough, the debtor having been arrested in the county of Merrimack, is in law a compliance with the condition of the bond.

By the law of 1791 (N. H. Laws, 1815, 153), persons imprisoned for debt were entitled to the limits of the prison yard, upon giving bond with sureties as therein set forth; and it was provided that any persons committed on execution for debt and having no estate to the value of ten pounds, might after thirty days from the time of commitment, "apply to any two justices of the superior court of judicature, or any two justices of the court of common pleas in the county where any such person is committed, or one of the justices of the supreme court and one of the justices of said court of common pleas, or to either of said courts while sitting in the same town where such prisoner is committed, and pray to be admitted to take the oath hereinafter prescribed." By this act the bonds given as above were to be approved by two justices of the superior court, court of common pleas, or one of each; or either of such justices with a justice of the peace.

By the law of June 23, 1814, any two justices of the peace and of the quorum were empowered to administer the poor debtor's oath; and any two such justices of the peace and quorum, within and for the county where such prisoner shall be so committed," were authorized to approve such bonds. Under this Statute the late Chief Justice *Richardson*, in his Justice of the Peace (p. 146), assumes that this authority to administer the oath is given to two justices of the peace and quorum, within and for the county where the debtor is confined.

By the law of June, 1829 (Ed. 1829, 476), provision is made for the approval of such bonds by the judges as before, and by two justices of the peace and quorum within the county where such prisoner shall be committed—and provision for administering the oath by two justices of the superior court of judicature, or of the court of common pleas, or any two commissioners of the jail delivery in the county in which they reside; the appointment of such commissioners, to act in their respective counties, having been provided for by the law of December, 1828; Laws 1829, 480.

Up to this time no provision had been made to allow debtors so arrested or imprisoned to go beyond the limits of the jail-yard, and of course the oath must have been there administered.

By the act of July 1831 (ch. 30), the prison limits were extended to the limits of their respective counties, and debtors were authorized, on arrest, to give bond as if actually committed. By the law of January 3, 1833 (ch. 97), it was provided that persons arrested or imprisoned on execution, should be discharged on giving bond with sufficient sureties, to take the poor debtor's oath within one year, or at the end of it surrender himself, at the jail, to the creditor—and also provided for the approval of such bond as in the former law, including two justices of the peace and quorum within the county where such person was arrested or imprisoned. Section 6 gives two justices of the peace and quorum all the powers vested in justices of the courts, or commissioners of jail delivery, to administer the poor debtor's oath; and section 7 provides that in all such cases the application to take the oath "and all subsequent proceedings thereon, shall be the same as now provided in the case of a person committed

on execution, so far as the same are not altered by this act." This law is substantially reënacted in the Revised Statutes (ch. 199 and 200), providing, however, for the approval of the bond by two justices of the peace and quorum of the county in which such person was arrested or imprisoned, and by them alone; and also omitting the provision that the proceedings shall be the same as in the case of a person committed on execution—but making the proceedings the same in fact in both cases; that is whether actually in prison, or discharged on bond.

Prior to the law of 1833, the proceedings for the discharge of persons imprisoned, by administering the poor debtor's oath, must have been had of necessity in the county where they were imprisoned, and within the prison limits. The law of 1833 provides for the discharge of the debtor upon giving bond, but expressly requires the proceedings in taking the oath to be the same as before; and we do not understand that any alteration, in this respect, was intended in the revision, especially as the same proceedings are to be had whether the debtor is actually in prison, or out upon bond.

In accordance with this view is, as we think, the general spirit of our legislation upon this subject, as manifested by the various provisions for the approval of the bond, and authorizing—both by the law of 1791 and of 1829—the justices of the old court of common pleas, within the county where the prisoner was committed, to administer the oath.

This accords, also, as we think, with the general practice in the State; and there is no view of public policy that suggests to our minds any sound reason for a change; on the contrary, unless the proceedings of the debtor must be had in the county where he was arrested or imprisoned, we see nothing to interfere with his electing to proceed in any county in the State; for the law regulating the bringing of transitory actions obviously does not apply, and such a construction, we conceive, could not fail to be injurious in its effects.

The remaining question is, whether the sickness of the debtor from the 12th day of January to the 3d day of February, which was at the expiration of the year, so that he was confined to his house in Manchester, is a good defense to the action. In *Goodwin* v. *Smith*, 4 N. H. 29, which was *scire facias* against bail, the defendant pleaded that ever since judgment was rendered against the principal, he had been sick, so that he could not be removed without manifest danger of his life, and so remained until he died, which was after the return of *non est inventus*. Upon general demurrer the plea was held bad, the opinion being delivered by Richardson, C. J., after much consideration. It was there held to be settled in this State, in accordance with *Hamilton* v. *Duncklee*, 1 N. H. 172, that if the principal die after a return of *non est inventus*, the bail is inevitably fixed; and that the rule still applied, although the principal was so sick ever after the issue of the execution that he could not have been surrendered without endangering his life. Unless, then, there is some distinction between the undertaking of the bail and the obligors, in a bond like the present, the case of *Goodwin* v.

*Smith*, is decisive on this question. But we are unable to see any such distinction; on the contrary, the undertaking in both cases is for the surrender of the debtor who has been arrested, that he may be charged in execution. And in both cases the same considerations of policy, to avoid false and delusive pretenses, are equally applicable.

In *Wynn* v. *Petty*, 4 East 101, the court refused to enlarge the time for the bail to surrender the principal, although it was shown that he could not be removed without endangering his life, holding that when one party must suffer by the act of God, the court could not interfere. In *Grant* v. *Fagan*, 4 East 190, the court also refused to interfere because of the unwarrantable arrest and detention of the principal by a foreign enemy, saying that the same excuse might as truly be made in the case of sickness such as to endanger life by a removal, where, nevertheless, the bail is answerable. In *Wistanley* v. *Gaitskell*, 16 East 389, it was held that the rule in *Wynn* v. *Petty*, "though a very strict one, proceeded upon reasons of sound policy," saying that the court goes no farther than to show that where the inconvenience arises from the act of God, it ought rather to be borne by the bail than the plaintiff; and that the court, in order to obviate false and delusive pretenses, will not interfere. In this case of *Wistanley* v. *Gaitskell*, the time was extended because the principal was then in the custody of the law in another process; and it appeared, by the return upon *habeas corpus*, that he could not be brought up without peril of his life, by reason of a compound fracture of his leg, and the court would not allow him to be taken out of the custody of the law, at such risk. The case of *Olcott* v. *Lilley*, 4 Johns. 407, accords with *Goodwin* v. *Smith*. There it appeared that the principal, from the time of the issue of the *ca. sa.* until its return, was so sick that he could not be surrendered, without endangering his life, and he died soon after. On motion by the bail to enter an *exoneretur* upon the bail-piece, it was held, *Kent*, C. J., that the bail was fixed; and the motion was denied.

The case before us comes, as we think, within the principle of these decisions, and there must therefore be

*Judgment for the plaintiff.*